USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3 - 1 - 10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JIMMY SMITH and ANTHONY PALUMBO, suing
on behalf of themselves and all others similarly
situated,

Plaintiffs,

- against -

THE NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES, et al.,

Defendants.

**REPORT AND**
**RECOMMENDATION**

**08 Civ. 7090 (GBD) (RLE)**

**To the HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

## I. INTRODUCTION

On August 8, 2008, Jimmy Smith and Anthony Palumbo filed a Complaint on behalf of

themselves and all others similarly situated, alleging violations of the Eighth Amendment related

to their treatment as heart attack victims or cardiac patients. (Compl. ¶ A.) Plaintiffs seek

injunctive relief, costs, and attorney's fees. (*Id.* ¶¶ B-F.) Defendants, the New York State

Department of Corrections ("DOCS") and Brian Fischer, the Commissioner of DOCS, answered

the Complaint on October 14, 2008. (Doc. No. 6.) Pending before the Court are Plaintiffs'

Motion to Certify Class (Doc. No. 14) and Defendants' Cross Motion for Summary Judgment.

(Doc. No. 29.) For the reasons that follow, I recommend that the Plaintiffs' Motion to Certify

Class be **DENIED**, and the Defendants' Cross Motion for Summary Judgment be **GRANTED**,

except as to Smith's transportation "van" claim against Fischer.

## II. BACKGROUND

"Plaintiffs allege that, as cardiac patients, their treatment and conditions of confinement

have been substandard in relation to accepted medical practices and procedures." (Compl. ¶ 2.)

Specifically, Plaintiffs contend that their rights have been violated because 1) they are forced to wear shackles, waist chains, and handcuffs during long trips for hospital visits which harm their health ("transportation claim"); 2) they are denied access to ice and fans to cool themselves during hot and humid weather ("ice claim"); 3) they are denied the required cardiac-specific diet of fruits and vegetables and white meat used widely by cardiologists and recommended by the American Medical Association ("diet claim"); and 4) they are denied access to cells and areas of the correctional facility that do not require climbing stairs ("stairs claim"). (*Id.* ¶¶ 2, 15.)

Smith is a DOCS prisoner at the Woodbourne Correctional Facility ("Woodbourne") who suffered a heart attack on June 20, 2004, while incarcerated at the Bare Hill Correctional Facility. (Compl. ¶ 3.) As a result, three stents were placed in his heart, and a pacemaker installed. (*Id.* ¶¶ 9-11.) Palumbo is a DOCS prisoner who suffered a heart attack on January 27, 2003, while incarcerated at the Eastern Correctional Facility and was transferred to Woodbourne shortly after his heart attack. (Compl. ¶ 4; Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and in Support of Defendants' Cross-Motion for Summary Judgment ("Defs.' Mem.") at 1.) He is currently incarcerated at the Mid-Orange Correctional Facility ("Mid-Orange"). (*Id.*) Plaintiffs argue that this case is best represented through a class action because there are many inmates who are heart attack survivors who have been, and are being, subjected to the same harms Plaintiffs are suffering. (*See* Plaintiffs' Memorandum of Law in Support of Motion for Class Certification ("Pl.'s Mem.").) Smith and Palumbo "seek class certification on behalf of all inmates incarcerated by the New York State Department of Correctional Services who suffer from cardiovascular disease and/or have suffered a heart attack (myocardial infarction)." (Pl.'s Mem. at 3.) Through a class action, Plaintiffs seek injunctive

2

relief and ask the Court to order Defendants to provide diet and exercise counseling to Plaintiffs as well as a heart-healthy diet and heart-rate monitoring equipment for use during exercise. (*Id.*) Plaintiffs also "seek a permanent injunction against DOCS' practice of allowing cardiac prisoners to be shackled and/or restrained for prolonged periods of time while being transported for outside medical visits." (Plaintiffs's Memorandum of Law in Reply and Opposition (Pl.'s Reply") at 6.) Specifically, Plaintiffs assert that they are harmed by both hub trips and van trips. Hub trips are a DOCS method of transporting inmates from multiple correctional facilities to medical centers. (Compl. ¶ 14.) After an inmate has completed his medical appointment, he must wait, shackled, until the others inmates' appointments are finished. (*Id.* ¶ 15.) This allegedly presents a problem for cardiac patients such as Smith and Palumbo because they are forced to spend approximately ten to fourteen hours in shackles without being able to move or lie down. (*Id.*) Plaintiffs are also shackled during van trips but such trips are shorter, and the vans go directly from the correctional facility to the medical center. (Smith Dep. at 20.)

Defendants oppose the certification of a class and argue that the Court should grant summary judgment in their favor. (Defs.' Mem.) They argue that 1) Plaintiffs have failed to exhaust their exercise and ice claims; 2) the Eleventh Amendment's qualified immunity shields DOCS from all liability; 3) Plaintiffs do not have standing for their transportation or diet claims; 4) Palumbo's transportation claim is moot because he is no longer incarcerated at Woodbourne; and 5) the Plaintiffs have failed to show that their claims satisfy each of the requirements of Rule 23(a). (Defs.' Mem.)

3

## III. DISCUSSION

### A. Failure To Exhaust

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 122 S. Ct. 983, 984 (2002). The exhaustion requirement must be satisfied before filing a complaint. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) ("[C]ourts must take care not to frustrate the policy concerns underlying § 1997e(a) by allowing inmate-plaintiffs to file or proceed with lawsuits before exhausting administrative remedies."). Plaintiffs concede that they failed to exhaust both their exercise and ice claims and have withdrawn both of those claims. (Pl.'s Reply at 1.) Thus, the exercise and ice claims should be **DISMISSED** and the only claims requiring analysis are the transportation, diet, and stairs claims.

### B. Qualified Immunity

"The Eleventh Amendment serves as a jurisdictional bar to suits against a state agency regardless of the nature of the relief sought, including suits in equity." *Dyno v. Binghamton*, 2009 WL 1663990 at *5 (N.D.N.Y. June 15, 2009) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Agencies of the state, such as DOCS, are entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter

4

ego of the state and the state is the real party in interest. *Santiago v. New York State Dpt. of Correctional Servs.*, 945 F.2d 25, 28, n.1 (2d Cir. 1991). However, claims for declaratory and injunctive relief against individual state defendants in their official capacities are not specifically barred by the Eleventh Amendment. *Johnson v. Goord*, 2004 WL 2199500, at *4 (S.D.N.Y. Sept. 24, 2004); *Verley v. Wright*, 2007 WL 2822199 at *9 (S.D.N.Y. Sept. 27, 2007); *Davis v. New York*, 316 F.3d 93, 101-02 (2d Cir. 2002). To the extent Plaintiffs are seeking such relief, their claims are not barred. *Dicks v. Binding Together*, 2007 WL 1462217 at *5 (S.D.N.Y. May 18, 2007) (citing *Santiago v. New York State Dpt. of Correctional Servs.*, 945 F.2d at 32; *Ex parte Young*, 209 U.S. 123 (1908)). Here, Plaintiffs seek only prospective relief against Fischer in his official capacity[1].

## C. Standing

Federal courts may only decide "Cases and Controversies." U.S. CONST. art. III, § 2; *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003). To have Article III standing, 1) a plaintiff must have suffered an injury in fact, 2) there must be a causal connection between the injury and the conduct complained of, and 3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Bennet v. Spear*, 520 U.S. 154, 162 (1997). At the summary judgment stage, the plaintiff must set forth specific facts through affidavits or evidence supporting the three elements of standing. *Lujan*, 504 U.S. at 561. The injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *Baur*, 352 F.3d at 632. The

---

[1]Plaintiffs conceded their lawsuit against DOCS and will "not assert their claims against DOCS." (Pl.'s Reply at 18.) Therefore, the only remaining Defendant in this lawsuit is Fischer.

5

injury analysis "often turns on the nature and source of the claim asserted " *Baur*, 352 F.3d at 632 (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "[T]hreatened harm in the form of an increased risk of future injury may serve as injury-in-fact for Article III standing purposes." *Baur*, 352 F.3d at 633.

## 1. Neither Plaintiff has Standing to Bring a Hub Claim; Only Smith has Standing to Bring a Van Transportation Claim

Plaintiffs argue that they have standing to bring their transportation claims because they "clearly allege a concrete and particularized injury-in-fact as well as a causal connection between each plaintiff's injury and the conduct complained of." (Pl.'s Reply at 8, n. 4.) They allege that they were injured by the hub and van trips, and submit that their health has been injured by the restraints they are forced to wear during transportation to medical facilities. (*Id.* at 7-13; *see* Smith Dep. at 22-27, 36, 69-70; Palumbo Dep. 41-47, 52, 56-59, 62-63, 66-69.)

### a. Hub Claims

Fischer claims that Plaintiffs lack standing to bring their hub claims because Smith has a "no-hub" permit, and Palumbo had one until he left Woodbourne. (Defs.' Mem. at 15.) A "no-hub" permit exempts inmates from hub trips. (*Id.*) This case was filed August 4, 2008. Smith received his "no-hub" permit on October 14, 2004. (Defs.' Mem., Early Dec., Exs. A, B, D.) Palumbo had his "no-hub" permit for "most of his time" at Woodbourne, and at the very least since March 20, 2008. (Defs.' Mem., Early Dec. ¶6; Palumbo Dep. at 44.) He has not been on any medical trips since his transfer to Mid-Orange. (Palumbo Dep. at 46.) Fischer argues that such accommodations are DOCS policy, including Directive 4901, which "provides for medical exceptions to the general policy of restraining inmates during transport." (*Id.*) Fischer maintains

6

that "[r]equests by the DOCS medical staff for accommodation of individual inmates, such as exemption from hub trips or trips during hot weather, are routinely honored." (*Id.*)

Neither Smith nor Palumbo has provided the Court with facts or evidence that his permit will not be honored or rescinded. Mere speculation as to the rescission of a permit does not confer standing. *See Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 330 (2d Cir. 1997) ("the keystone for determining injury in fact is the requirement that it be 'distinct and palpable' - and, conversely, that it not be 'abstract' or 'conjectural' or 'hypothetical.'"). Although Plaintiffs may have suffered an injury as to hub transportation, the injury was remedied by Fischer prior to this lawsuit. Plaintiffs have thus failed to show standing as to the hub transportation claim.

### b. Van Claims

Smith contends that the van trip accommodations "appear to be a discretionary procedure left to the officer based on whatever his judgment at the moment might be." (Smith Dep. at 40.) He asserts "there's no consistency between the various transport officers." (*Id.*) He also maintains that there is no distinction between short and long van trips. (*Id.* at 41.)

Fischer argues that Smith lacks standing for his van claim because he has received significant accommodation from Woodbourne staff whenever he takes a van trip. (Defs' Mem. at 15. ) Specifically, DOCS issued an official memorandum ordering reasonable accommodations for Smith's van trips on December 28, 2007. (Defs.' Mem., Early Dec., Exs. A, B, D.) The memorandum requires that Smith be secured only with oversized cuffs and leg irons on van trips and that he have one arm free of cuffs so he can use his cane. (Defs.' Reply at 4.)

7

Smith has standing to bring his van claim because he has alleged facts and evidence through his deposition that he is still suffering harm from the restraints applied during his van trips. (*Id.* at 37, 40-41.)

Palumbo's van claim is moot. (*see infra.*)

## 2. Both Plaintiffs have Standing for the Diet Claim

Plaintiffs allege that they are being served insufficient meals for heart-attack survivors at Woodbourne and Mid-Orange and thus have pled an injury-in-fact. (Smith Dep. at 22-27, 36, 69-70; Palumbo Dep. 41-47, 52, 56-59, 62-63, 66-69.)

Fischer contends that Plaintiffs have no standing or Eighth Amendment claim (Defs.' Mem. at 18.) but he presents arguments only on the viability of the Eighth Amendment claim. Specifically, Fischer presents factual assertions and arguments to contradict Plaintiffs in an attempt to show no factual disputes. (*Id.*) He does not allege, however, that Plaintiffs have suffered no injury-in-fact. Instead he argues that any injury Plaintiffs might have suffered does not rise to the level of cruel and unusual punishment. (*Id.*)

Plaintiffs have standing to bring their claim for insufficient diet because they have alleged harm to their health stemming from a meal plan administered by DOCS. (Pl.'s Mem. at 15-18.)

## 3. Neither Plaintiff has Standing for the Stairs Claim

Neither party fully addresses the question of whether the stairs claim is moot or if the Plaintiffs have standing to bring it. Plaintiffs do not "set forth specific facts through affidavits or

evidence supporting the three elements of standing[2]." Lujan, 504 U.S. at 561. Therefore, even if the claim could survive summary judgment on the merits, Plaintiffs have failed to set forth sufficient evidence showing that it is meritorious or that they have standing. Indeed, Plaintiffs have set forth no facts or evidence as to the stairs claim except for the bare allegations in the Complaint. At the summary judgment stage, the plaintiff must set forth specific facts through affidavits or evidence supporting the three elements of standing. *Lujan*, 504 U.S. at 561. Therefore, Plaintiffs do not have standing to bring their stairs claim because they have failed to show any facts or evidence that an injury has occurred and the stairs claim should be

## DISMISSED.

### D. Mootness

A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Voluntary cessation of illegal conduct does not necessarily render the controversy moot." *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 91-92 (2d Cir. 1998). "An originally justiciable issue may abate if 1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and 2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 91 (2d Cir. 1998) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "Mere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation or demonstrated

---

[2]In his deposition, Palumbo mentions stairs, but only in the context of his diet claim. He does not discuss the issue of being housed in a cell where he has to climb stairs in any portion of the deposition testimony submitted. (Palumbo Dep. at 62-63.)

probability of recurrence." *Van Wie v. Pataki*, 267 F.3d 109, 115 (2d Cir. 2001). The defendants burden is a heavy one to ensure the allegedly illegal activities do not temporarily cease only to resume after the claims have been dismissed. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000).

### 1. Palumbo's Claim that his Van Trips are Unconstitutional is Moot

Since Palumbo is no longer at Woodbourne, Fischer assert that his transportation claim as to van trips is moot because he has been transferred. (Defs.' Mem. at 16.) Plaintiffs argue that Palumbo's van trip claim is not moot because "the determination of what restraints to use are made by the facility Superintendent and Deputy Superintendent of Security." (Pl.'s Reply at 9.) They maintain that the "shackling decisions" are discretionary and are left to individual correctional officers. (*Id.* at 9-10.) Plaintiffs further assert that Palumbo's transfer does not moot his action for injunctive relief because they are suing DOCS, not an individual facility. (*Id.* at 10.)

Palumbo's van trips are moot for three reasons. First, any argument that he might be exposed to health risks on van trips at Mid-Orange is nothing more than speculation. Second, any argument presented as to DOCS fails because Plaintiffs have conceded their lawsuit as to DOCS. Finally, Palumbo's transfer from Woodbourne moots his claims against Woodbourne. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.")

### 2. Both Plaintiffs' Claims that the Hub Trips are Unconstitutional are Moot

Fischer argues that both Plaintiffs have been issued "no-hub" permits and will not be exposed to the health risks presented by the hub trips. (Defs.' Mem. at 15-17.) Plaintiffs contend

10

that their hub trips claims are not moot because Fischer has not made any assurances that their prolonged shackling during hub trips or van trips have been completely and irrevocably eradicated. *(Id.* at 8.) They assert that since it was the Woodbourne staff that issued the "no-hub" permits, the permits can be revoked at any time because the decision is made at the discretion of the Woodbourne staff. *(Id.* at 8-9.) Plaintiffs claim that if Smith is moved to another facility, he remains threatened with the possibility of having to endure hub trips that endanger his health because Fischer did not claim that another facility would honor a "no-hub" permit issued by Woodbourne. *(Id.* at 9.) They maintain that there is no guarantee that Palumbo will not be placed on hub trips at his new facility. *(Id.)*

Plaintiffs hub trips claims are moot because both Plaintiffs had been issued "no-hub" permits prior to the filing of the Complaint. *(See* Early Dec.) Any speculation as to the possibility of having the "no-hub" permits revoked is not grounds for a lawsuit.

### 3. Smith's Claim that his Van Trips are Unconstitutional is Not Moot

Fischer argues that since Smith has received significant accommodations from Woodbourne staff during his van trips, he does not have standing.[3] Smith contends that his van trip claim is not moot because the determination of what restraints to use on van trips are made by facility personnel. *(Id.)* The Court agrees with Smith. His van trip claim is not moot since he is still subject to determinations of individual Woodbourne staff. (Smith Dep. at 37, 40-41.)

---

[3]Although Fischer characterizes his argument as based on standing, the presentation suggests issues regarding both standing and mootness.

## E. Summary of Claims

Therefore, Plaintiff Smith has a remaining transportation claim as to van trips against Fischer. Both Plaintiffs have a diet claim against Fischer. All other claims should be **DISMISSED** because Plaintiffs lack standing or the claims are moot.

## F. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if it determines that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Under this standard, summary judgment is proper if "viewing the record in the light most favorable to the nonmoving party, the evidence offered demonstrates that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." *Pension Benefit Guar. Corp. v. LTV Corp.*, 875 F.2d 1008, 1015 (2d Cir. 1989) (internal quotations omitted), *rev'd on other grounds*, 496 U.S. 633 (1990). In making this determination, the court does not resolve disputed factual issues, but reaches a conclusion as to whether there exists "a genuine and material issue for trial." *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1175 (2d Cir. 1993). An issue of fact is "genuine" if it provides a basis for "a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate where no reasonable trier of fact could find in favor of the nonmoving party, *H. L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989), thereby "dispos[ing] of meritless claims before becoming entrenched in a frivolous and costly trial." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987).

12

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568 (2d Cir. 1993) (citing *Adickes v. S.H. Kress & Co,*, 398 U.S. 144, 157 (1970)). This burden may be met by demonstrating that there is a lack of evidence to support the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party satisfies this initial burden, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. "[T]he mere existence of factual issues -- where those issues are not material to the claims before the court -- will not suffice to defeat a motion for summary judgment." *Quarles v. Gen. Motors Corp.,* 758 F.2d 839, 840 (2d Cir. 1985); *see also Anderson*, 477 U.S. at 247-48.

## 1. Eighth Amendment Claims

### a. Inadequate Medical Care

The Eighth Amendment, made applicable to the states through the Fourteenth Amendment, *see, e.g., Rhodes v. Chapman*, 452 U.S. 337, 344-45 (1981), prohibits the infliction of "cruel and unusual punishment" on those convicted of crimes. U.S. CONST. amend. VIII; *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The prohibition against cruel and unusual punishment includes the requirement that prison officials provide adequate medical care to inmates. *Farmer v. Brennan*, 511 U.S. at 832. To establish a constitutional claim of inadequate medical care, "a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

13

This standard has two components. The deprivation of care must be "sufficiently serious," *Id.* (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995)) and the defendant "must act with a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To determine a "sufficiently serious" medical condition, courts may consider several factors such as "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (citations omitted). "A medical condition is considered serious if it is 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Hernandez v. Keane*, 2000 WL 16951, at *2 (S.D.N.Y., Jan. 7, 2000) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996). This includes not only conditions affecting plaintiff's current health problems, but also those that are "very likely to cause serious illness and needless suffering" in the ensuing weeks, months or year. *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

An official acts with a culpable state of mind when he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Negligence, even if it amounts to medical malpractice, does not give rise to liability under the Eighth Amendment. *Id.* at 703. Thus, "the plaintiff must demonstrate that the defendant actually wish[ed] him harm or at least [was] totally unconcerned with his welfare." *LaBounty v. Gomez*, 1997 WL 104959, at *5 (S.D.N.Y., March 10, 1997) (quoting *Hathaway*, 37 F.3d at 69) (internal

14

quotations and citations omitted). "At a minimum, there must be at least some allegations of a conscious or callous indifference to a prisoner's rights." *Zaire v. Dalsheim*, 698 F. Supp. 57, 59 (S.D.N.Y., 1998), *aff'd*, 904 F.2d 33 (2d Cir. 1990). "Medical decisions will constitute 'indifference' only when they are contrary to accepted medical standards." *Ramos v. Artuz*, 2003 WL 342347, at *7 (S.D.N.Y., Feb. 14, 2003) (citing *Harding v. Kuhlmann*, 588 F. Supp. 1315, 1316 (S.D.N.Y. 1984), *aff'd*, 762 F.2d 990 (2d Cir. 1985)).

### i. Smith has Shown Sufficient Facts to Support his Transportation "Van" Claim

First, Smith contends that he has suffered and continues to suffer from a "sufficiently serious" deprivation of care because he is a heart attack survivor. (*See* Pl.'s Reply at 13.) For example, during Smith's transport to Woodbourne in August, 2004, he suffered severe chest pains and had to be diverted to another prison facility. (Compl. ¶ 12.) During another transport, Smith suffered chest pains and began vomiting. (*Id.* ¶ 13.) Any time Smith is transported outside the correctional facility, he is put in restraints. (*Id.* at 22.) He is handcuffed and a black box is placed over his hands. (*Id.*) The black box allows for Smith to have little flexibility and prevents him from moving his arms, often constricting his breathing. (*Id.* at 23.) Smith is shackled at each ankle, with a chain between the two shackles and he is put in all the restraints prior to leaving the facility and after being thoroughly frisked. (*Id.* at 23-24.) At Coxsackie Medical Center, he must wait for his medical appointment while handcuffed. (*Id.*) At Albany Medical Center, he waits fully handcuffed, shackled, and in a black box while waiting to see his doctor. (*Id.* at 25.)

Second, Smith asserts that Fischer had a culpable state of mind because he was aware of the risk that hub and van trips posed to heart attack survivors and he failed to "send out a state-wide directive to all the facilities that this should never happen again." (Pl.'s Reply at 15.) Smith

15

argues that Fischer acted with "callous indifference" by failing to change the transportation standards for all of DOCS prison facilities. (*Id.*) Most importantly, Smith contends that the van trip accommodations "appear to be a discretionary procedure left to the officer based on whatever his judgment at the moment might be." (Smith Dep. at 40.) Smith maintains that while he may occasionally get "Big Boy cuffs[4]" or other accommodations, it "depend[s] on the officer and his mood." (*Id.* at 37.) He asserts "there's no consistency between the various transport officers." (*Id.*) He also maintains that there is no distinction between short and long trips. (*Id.* at 41.)

Fischer contends that Smith has failed to show inadequate medical care because he has not presented enough facts and evidence to support the claim. (Def.'s Reply at 4.) Fischer argues that even though Smith had problems with the van trips, he received accommodations and "has presented no facts suggesting he has had problems with his outside trips from Woodbourne after these accommodations. . . ." (*Id.*) Moreover, Fischer asserts that DOCS policy, specifically Directive 4901, "provides for medical exceptions to the general policy of restraining inmates during transport" and that "[r]equests by the DOCS medical staff for accommodation of individual inmates, such as exemption from hub trips or trips during hot weather, are routinely honored." (*Id.*)

The Court finds that Smith has suffered and is suffering from a "sufficiently serious" deprivation of care because of his condition as a heart-attack survivor. Moreover, reasonable minds could differ as to whether Fischer has acted, and is acting, with callous indifference toward Smith because Smith contends that he only occasionally receives accommodations for

---

[4]"Big Boy cuffs" are oversized or large cuffs designed for especially large men. (Defs.' Mem., Early Dec. ¶ 12.)

16

van trips whereas Fischer asserts that Smith has received full accommodation. Thus, a material factual dispute remains as to Smith's van trips, and this aspect of the transportation claim should proceed.

### ii. Plaintiffs have Not Shown Sufficient Facts to Support their Diet Claim

The Eighth Amendment prohibition against cruel and unusual punishment requires that inmates be served "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)); *Bee v. Krupp*, 2009 WL 2981910 at *3 (S.D.N.Y. Sept. 15, 2009) (finding that "visible globs of spit" in inmate's food did not violate the Eighth Amendment); *Griffin v. Smith*, 493 F. Supp. 129, 131 (W.D.N.Y. 1980) (finding that unsanitary food utensils, including cigarette burns and hair on food trays was sufficient to sustain an Eighth Amendment claim); *cf. Lunney v. Brureton*, 2005 WL 121720 (S.D.N.Y. Jan. 21, 2005) (citing *Hutto v. Finney*, 437 U.S. 678, 683, 686 (1978) (fewer than 1000 calories per day diet of "grue," a substance "created by mashing meat, potatoes, oleo, syrup, vegetables, eggs, and seasoning into a paste" and baking it, "might be tolerable for a few days and intolerably cruel for weeks or months"). The Second Circuit has found that the DOCS mandatory special meals policy does not constitute cruel and unusual punishment. *See Garcia v. Miller*, 201 F.3d 431 (2d Cir. 1999) (finding that a blind, diabetic inmate who was prescribed with a medically necessary, special diet failed to state an Eighth Amendment claim which was based on the prison's requirement that he eat the special diabetic food and attend meals to receive the special diet).

17

Plaintiffs assert that they must be given a diet recommended by the American Heart Association in order to meet their dietary needs as cardiac patients. (*See* Compl. ¶¶ 23-29, 53-56, Pl.'s Mem. at 15-18.) Smith claims that his " DOCS physicians prescribed a diet including fruits and vegetables and excluding greasy foods." (Compl. ¶ 29.) When he did not receive the prescribed diet, he filed grievances and was told at every stage to "consult with his physician." (*Id.*) Smith contends that DOCS has taken no action to apply the prescribed diet and that the grievance process has not resolved the issue. (*Id.*) As a result, he claims that his "health is deteriorating." (*Id.*) Smith is on DOCS Control B diet, which is considered a low-fat, low-cholesterol diet. (Smith Dep. at 69.) He alleges that the food is "extremely monotonous" and his "problem is with the lack of vegetables. They're mush out of a can." (Smith Dep. at 69.) He also complains of the lack of lettuce. (*Id.*) Smith admits that he buys food from the commissary, most of which is not heart healthy.[5] (*Id.* at 73-74.) He exchanges his commissary food for favors such as laundry and ironing, and he eats the items he does not exchange. (*Id.*)

Palumbo complains of "processed meat" instead of "real turkey breast" and maintains that he is fed turkey "24/7 three meals a day and the canned vegetables that still have the sodium count in it even though they rinse them off." (Palumbo Dep. at 56-57.) He also complains of the lack of fresh fruit and vegetables and real milk or fat-free milk. (*Id.*) Additionally, Palumbo refuses the special diets offered by DOCS because the meals are only offered in the mornings and he prefers to control his own eating habits. (*Id.* at 59.) In fact, Palumbo ceased eating at the mess hall altogether and relies solely on food sold at the commissary or food sent to him from family

---

[5]Smith's commissary receipt lists items such as cheese, salami, honey bun cakes, ice cream, grits, and mayonnaise which are "not recommended for a patient with a history of cardiovascular disease." (Defs.' Mem., Schwartz Dec., Ex. 5; Belding-Wilson Dec. ¶ 15.))

18

and friends. (*Id.* at 59, 65.) Most of Palumbo's commissary purchases are considered unhealthy for a heart attack survivor[6]. (*See* Defs.' Mem., Belding-Wilson Dec. ¶ 15.) Palumbo asserts that he buys many of the items at the commissary because he is a cook who cooks "for the guys." (*Id.* at 67.) He alleges that he cooks for about twenty-five people three times a week. (*Id.* at 68.) Palumbo asserts that he uses the rest of his commissary purchases for bartering. (*Id.*)

Fischer contends that the Plaintiffs have failed to show sufficient facts and evidence to support a diet claim because DOCS offers a "variety of modified therapeutic menus to inmates whose medical conditions require them, and the DOCS regional dietitians are available for consultation on specific dietary problems." (Defs.' Mem. at 18.) The modified menus include "a low fat, low cholesterol, low sodium and enhanced fiber menu, (the Controlled A menu), as well as a variation thereof designed to control carbohydrates (the Controlled B menu)." (*Id.*) Fischer maintains that "these menus are frequently recommended for certain types of cardiovascular conditions and were drawn up by trained dietitians from research materials from leading health care organizations, including the American Heart Association." (*Id.*, Belding-Wilson Dec. ¶ 10.) Fischer asserts that the DOCS Controlled A and B diets include an uncanned, fresh vegetable at every lunch and dinner, and either canned or fresh fruit almost every day. (*Id.*, Belding-Wilson Dec. ¶ 11.)

Plaintiffs argue that since Fischer is failing to provide four to five servings of fruits and vegetables per day, he is failing to meet the recommended American Heart Association standards. (Pl.'s Reply at 15.) Specifically, Plaintiffs contend that on June 1, 2009, inmates on

---

[6]Palumbo's commissary receipt lists items such as tobacco, soda, chips, sugar, and ice cream which are "not recommended for a patient with a history of cardiovascular disease." (Defs.' Mem., Schwartz Dec., Ex. 10; Belding-Wilson Dec. ¶ 15.))

19

Controlled A and B diets were served "one half of one cup each of green beans and steamed carrots, two packets of apple juice, one cup of whipped potatoes, one cup of pears, one cup of 'Orange beverage' and one cup of 'Hawaiian beverage.'" (*Id.* at 16.) On June 2, 2009, "the vegetable included a container of coleslaw and one-half cup of mixed vegetables." (*Id.*) Plaintiffs argue that "unless DOCS considers the packet of ketchup and a cup of cornmeal a vegetable, then they vastly failed in their obligation on that day." (*Id.*)

Although there is some question as to how many fruits and vegetables Plaintiffs receive on any given day, there is no dispute that Plaintiffs receive them. Plaintiffs have failed to allege facts or evidence showing that a genuine issue of material fact exists as to their diet. Neither Plaintiff has shown any facts or evidence that the current diet is affecting their health or causing their health to "deteriorate." (Compl. at ¶ 29.) Nor has either Plaintiff shown that Fischer has acted with any deliberate indifference as to their diet. Fischer has not withheld food from Plaintiffs or prevented them from participating in either of DOCS therapeutic diets that are administered to heart-attack survivors. In fact, both Plaintiffs have been offered a therapeutic diet from DOCS, and Smith participates in Controlled B diet. Smith's complaints about the diet's monotony cannot sustain an Eighth Amendment claim of cruel and unusual punishment. Similarly, Palumbo's complaint about processed food and the absence of real milk do not support a claim. Moreover, he has chosen to avoid the therapeutic menus completely and to purchase food solely from the commissary. DOCS is required to provide food that is "nutritionally adequate . . . prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles*, 725 F.2d at 15. Neither Plaintiff has alleged sufficient facts or evidence to show that Fischer is providing them with a

20

diet that violates the Eighth Amendment. There is no evidence that either the Controlled A or B diet, or any DOCS diet, constitutes cruel and unusual punishment; rather, the special, therapeutic diets administered by DOCS show that DOCS has acknowledged the needs of inmates with dietary and medical needs to be fed in such a way that does not harm them. The diet claims should be **DISMISSED**.

## G. Standard for Class Certification under Rule 23

The remaining claim in this case is Smith's claim for cruel and unusual punishment as to van trips. Plaintiffs initially sought class certification "on behalf of all inmates incarcerated by the New York State Department of Correctional Services who suffer from cardiovascular disease and/or have suffered a heart attack." (Pl.'s Mem. at 3.) As to transportation, "they want to no longer be forced to endure hazardous and debilitating conditions like being shackled at the ankles and wrists for hours at a time." (*Id.*)

A class will be certified if Plaintiffs satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. FED. R. CIV. P. 23(a); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997). "[P]arties seeking class certification must [also] show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem*, 521 U.S. at 614. The four Rule 23 factors must be proven by a preponderance of the evidence. *Teamsters Local 445 Freight Division Pension Fund v. Bombardier, Inc.*, 564 F.3d 196, 202 (2d Cir. 2008).

Numerosity requires that joinder of all members be impracticable. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Here, numerosity is satisfied because there are approximately 195 DOCS inmates who have suffered heart attacks. (Pl.'s Mot., Isseks Dec., Ex.

21

1; *see Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 2003) (presuming that 40 members meets test for numerosity)). Since all of the proposed class members are incarcerated, it is unlikely that the individual class members would bring this lawsuit on their own because of the substantial costs of litigation and comparatively limited access to courts.

Commonality requires "questions of law or fact common to the class" and the "injuries derive from a unitary course of conduct by a single system." FED. R. CIV. P. 23(a)(2); *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). Smith is alleging a violation of the Eighth Amendment by Fischer for failing to provide reasonable accommodations for every van trip he takes, even though all DOCS personnel have been ordered to provide such accommodations since December 28, 2007. (*See* Defs.' Mem., Early Dec., Ex. D.) The common question of fact for this issue, according to Smith, is "Does DOCS routinely and unnecessarily constrain the proposed class members causing them to suffer swelling in their extremities and creating an unreasonable risk of congestive heart failure?" (Pl.'s Mot. at 10.) Smith has provided no evidence or facts to show, nor even specifically alleged, that other DOCS heart attack survivors have not been provided with reasonable accommodations for van trips.

"The existence of a valid individual claim does not necessarily warrant the conclusion that the individual plaintiff may successfully maintain a class action." *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 877 (1984). To bridge the gap between an individual's claim and the existence of a class with which he shares common questions of law or fact, the plaintiff must prove much more than the validity of his own claims. *Harris v. Initial Sec., Inc.*, 2007 WL 703868 at *4 (S.D.N.Y., Mar. 7, 2007). Smith has failed to show, or even allege, that any of the proposed class members have received any memorandums directing DOCS personnel to

22

specifically provide reasonable accommodations on van trips. In fact, the proposed class presumably benefits from DOCS Directive 4901 which provides for medical exceptions to the general policy of restraining inmates during transport. (Defs.' Reply at 4.) Given the specific nature of Smith's remaining claim, there is no showing of commonality between his claim and that of the proposed class, and class certification should be **DENIED.**

## IV. CONCLUSION

In conclusion, I recommend that the Plaintiffs's Motion to Certify Class be **DENIED**, and the Defendants's Cross Motion for Summary Judgment be **GRANTED**, except as to Smith's transportation "van" claim against Fischer.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 630, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(d).

23

**Dated: February 25, 2010**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Report and Recommendation were sent to:**

Counsel for Plaintiffs
Robert N. Isseks, Esq.
Alex Smith, Esq.
6 North Street
Middletown, NY 10940

Peter Sell, Esq.
324 West 96th Street, Suite 4B
New York, NY 10025

Counsel for Defendants
Andrew M. Cuomo
Attorney General of the State of New York
120 Broadway - 24th Floor
New York, NY 10271

John M. Schwartz
Assistant Attorney General
120 Broadway - 24th Floor
New York, NY 10271